## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:21-cv-00227-MR

| | |
|---|---|
| **RICKY L. HEFNER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM OF** |
| **vs.** ) | **DECISION AND ORDER** |
| ) | |
| **JOHNATHAN HEATH JONES,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendants' Motion for Summary Judgment. [Doc. 39]. Also pending are the Plaintiff's pro se Motion for Funds for a Court Appointment Expert Video Technology Specialist Testimony [Doc. 38], Motion for Court Order [Doc. 42], Motion for Appointment of Counsel [Doc. 46]; and the Defendants' Motion to Seal [Doc. 53].

## I. BACKGROUND

The incarcerated Plaintiff Ricky L. Hefner, proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983 and North Carolina law, addressing the circumstances surrounding his arrest on June 12, 2018 in Sylva, North

Carolina.  The Plaintiff's unverified Second Amended Complaint[1] [Doc. 19: Second Am. Complaint] passed initial review against Defendants Johnathan Heath Jones ("Sergeant Jones") and Kimberly Osborne ("Officer Osborne") in their individual capacities for violating the Plaintiff's Fourth Amendment rights.  [See Doc. 21: Order on Initial Review].  The Plaintiff seeks compensatory and punitive damages.  [Doc. 19: Second Am. Complaint at 8].

Sergeant Jones and Officer Osborne filed the instant Motion for Summary Judgment on January 13, 2023.  [Doc. 39: MSJ].  Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court.  [Doc. 41: Roseboro Order].  The Plaintiff responded [Doc. 43: MSJ Resp.; Doc. 45: MSJ Resp. Memo.[2]], and the Defendants replied [Doc. 47: MSJ Reply].  The Plaintiff then filed a

---

[1] The Plaintiff's Amended Complaint [Doc. 12: Am. Compl.] is sworn and subscribed by Plaintiff before a notary public.  The Plaintiff's Complaint and Second Amended Complaint are not sworn or verified.  [See Doc. 1: Complaint; Doc. 19: Second Am. Compl.].

[2] Titled "Legal Argument in Support of his Response to the Defendants Motion for Summary Judgment."

Surreply [Doc. 51: MSJ Surreply],[3] which is not an authorized filing pursuant to the Court's Local Civil Rules, and will be stricken.[4] <u>See</u> LCvR 7.1(e). This matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. <u>Id.</u>

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (internal citations omitted).

---

[3] Titled "Plaintiff's Response to Defendant's Response to Plaintiff's Response to Defendant's Motion for Summary Judgment."

[4] Even if the Court were to consider the Surreply, it would not change the outcome of this proceeding.

3

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

4

"[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III.    FACTUAL BACKGROUND

The parties' forecasts of evidence show the following, which is undisputed except as otherwise noted.

On June 11, 2018, the Plaintiff walked into a Wal-Mart store to use the restroom, leaving his backpack with the store's greeter. [Doc. 12: Am. Compl. at 5-6]. According to the Plaintiff, he ran into Travis Arrwood, with "whom [the Plaintiff] has associated … on different occasions," who said that he was traveling in Craig Lackey's vehicle. [Id. at 6]. The Plaintiff asked for a ride. [Id. at 6-7]. Arrwood told the Plaintiff to come to the car when he was

5

finished in the store. [Id. at 6]. The Plaintiff retrieved his backpack, exited the store, found Lackey's parked vehicle, and got into the backseat. [Id. at 6-8]. Arrwood asked the Plaintiff to go into the store to buy a pack of batteries for the ride, and the Plaintiff agreed. [Id. at 8].

At approximately 11:30 p.m., Sergeant Jones, Officer Osborne, and another officer came to the Wal-Mart parking lot in relation to another matter. [Doc. 40-2: Jones Affid. at ¶ 3; Doc. 40-3 Osborne Affid. at ¶ 3]. Sergeant Jones observed the Plaintiff walking through the Wal-Mart parking lot wearing a backpack. [Doc. 40-2: Jones Affid. at ¶ 4]. Sergeant Jones, who was familiar with the Plaintiff, approached the Plaintiff and asked where he had been. The Plaintiff responded that he was recently released after serving a sentence. [Id. at ¶ 4]. The Plaintiff then re-entered the Wal-Mart store. [Doc. 12: Am. Compl. at 7]. Sergeant Jones asked Officer Osborne and another officer to keep an eye on the Plaintiff because the officers knew that he had a criminal history. [Doc. 40-2: Jones Affid. at ¶ 5; Doc. 40-3 Osborne Affid. at ¶ 4].

According to the officers, they saw the vehicle belonging to Craig Lackey pull into the parking lot and park at that point. [Doc. 40-2: Jones Affid. at ¶ 6]. Lackey and others had been arrested while in that vehicle on multiple occasions for possession of illegal drugs. [Id. at ¶ 5; Doc. 40-3

Osborne Affid. at ¶ 5]. Sergeant Jones and Officer Osborne were aware that the Plaintiff and Lackey both had criminal histories involving drug use and possession. [Doc. 40-2: Jones Affid. at ¶ 8; Doc. 40-3 Osborne Affid. at ¶ 7].

Sergeant Jones left the parking lot. Officer Osborne, who remained, saw the Plaintiff exit the store and observed that he was no longer carrying the backpack. [Doc. 40-2: Jones Affid. at ¶ 7; Doc. 40-3 Osborne Affid. at ¶ 6]. He got into the back of Lackey's vehicle. [Id.; Doc. 12: Am. Compl. at 8-9]. The Plaintiff asked Lackey and Arrwood why the vehicle was just sitting there, and Arrwood responded that they were waiting for Sergeant Jones to leave because "we don't have licence[s]…." [Doc. 12: Am. Compl. at 9]. Meanwhile, Sergeant Jones and Officer Osborne thought it was suspicious that the Plaintiff went into the Wal-Mart with a backpack but left without it, and then got into Lackey's vehicle. [Doc. 40-2: Jones Affid. at ¶ 8; Doc. 40-3 Osborne Affid. at ¶ 7].

The officers decided to walk up to the parked vehicle and make voluntary contact. [Doc. 40-2: Jones Affid. at ¶ 8; Doc. 40-3 Osborne Affid. at ¶ 7]. Upon approaching the vehicle, Jones and Osborne observed Lackey in the front passenger seat, the Plaintiff in the back driver's side seat, and Travis Arrwood in the driver's seat. [Doc. 40-2: Jones Affid. at ¶ 9; Doc. 40-3 Osborne Affid. at ¶ 8; Doc. 12: Am. Compl. at 5]. Jones had previously

arrested Arrwood for a parole violation and possession of illegal drugs. [Doc. 40-2: Jones Affid. at ¶ 9]. Jones was aware that none of the individuals in the car possessed a valid driver's license and decided to investigate further. [Id.].

Sergeant Jones asked Arrwood what was going on, and Arrwood indicated that they were waiting for a ride. [Id. at ¶ 10; Doc. 12: Am Compl. at 9]. Jones noticed that Arrwood and Lackey were looking around the front of the vehicle as though looking for something; a bag of syringes was in plain view in the center console. [Doc. 40-2: Jones Affid. at ¶ 10]. Officer Osborne observed the Plaintiff shuffling through his backpack in the backseat.[5] [Doc. 40-3 Osborne Affid. at ¶ 9]. She asked the Plaintiff what he was doing in his backpack, and the Plaintiff said that he could step out of the vehicle if Osborne wanted him to do so. [Doc. 40-3 Osborne Affid. at ¶ 9; Doc. 12: Am. Compl. at 9]. The Plaintiff consented to Osborne patting him down and searching his backpack. [Doc. 40-3 Osborne Affid. at ¶¶ 10-11; Doc. 12: Am. Compl. at 10]. Inside the backpack, Osborne located two pieces of folded tin foil, and the outer shell of a pen with a white powder residue inside. [Doc. 40-3: Osborne Affid. at ¶ 11; Doc. 12: Am. Compl. at 10]. Osborne asked

---

[5] The inconsistency regarding whether or not Plaintiff had his backpack when exiting the Wal-Mart the second time, or whether he had two backpacks, is not resolved in the record, but this does not raise any genuine issue of material fact.

the Plaintiff if the residue was methamphetamine and the Plaintiff responded that it probably was. [Doc. 40-3: Osborne Affid. at ¶ 11; Doc. 12: Am. Compl. at 12]. Field testing confirmed that the residue inside the pen case was methamphetamine. [Doc. 40-3: Osborne Affid. at ¶ 11; Doc. 40-2: Jones Affid. at ¶ 15; Doc. 12: Am. Compl. at 10].

Jones began searching Lackey's vehicle. He found a small egg-shaped container with a brown powder substance, which he suspected to be heroin, in the Plaintiff's seat that was outside of Arrwood and Lackey's reach. [Doc. 40-2: Jones Affid. at ¶¶ 14, 17; Doc. 40-3: Osborne Affid. at ¶ 18 ]. The Plaintiff, Arrwood, and Lackey all denied that the container was theirs. [Doc. 40-2: Jones Affid. at ¶ 16; Doc. 40-3: Osborne Affid. at ¶ 14]. Officer Osborne found a syringe in the backseat. [Doc. 40-3: Osborne Affid. at ¶ 13].

Sergeant Jones arrested the Plaintiff and took him to the detention center for possession of heroin and methamphetamine.[6] [Doc. 40-2: Jones Affid. at ¶¶ 17-18]. From the time of the Plaintiff's arrest until they arrived at the detention center, the Plaintiff begged Sergeant Jones to cut him a break because it would be a parole violation if he were charged with a felony. [Doc. 40-2: Jones Affid. at ¶ 19]. Jones took the Plaintiff before Magistrate

---

[6] According to the Plaintiff, Sergeant Jones told the Plaintiff that he was being arrested because he was nervous. [Doc. 12: Am. Compl. at 13].

Brahmer and the Plaintiff was charged with possession of heroin, possession of methamphetamine, and possession of drug paraphernalia. [Doc. 40-2: Jones Affid. at ¶ 18].

Sergeant Jones and Officer Osborne deny that they placed any illegal substances at the scene or observed the other doing so, and each believes that such did not occur. [Doc. 40-2: Jones Affid. at ¶¶ 20-21; Doc. 40-3: Osborne Affid. at ¶¶ 16-17].

The Plaintiff has submitted video files that purport to contain footage from Sergeant Jones and Officer Osborne's body-worn cameras.[7]  The footage attributed to Sergeant Jones depicts the following:[8]

| | |
|---|---|
| 12:34:50 | Jones approaches the parked SUV's driver's window, says "what's going on here, fellows?;" the driver responds "said he wanted a ride"; refers to purchased batteries |
| 12:35:09 | The driver hands Jones a plastic shopping bag |
| 12:35:13 | Jones asks the driver to put his exacto knives on the dash |

---

[7] The videos were submitted by the Plaintiff's mother along with other materials in opposition to the Motion for Summary Judgment; they are not authenticated [see Doc. 50: Notice of Manual Filing] and they were not produced by the Defendants in this case [see Doc. 52: Defendants' Response to Notice of Manual Filing].  The Plaintiff claims to have obtained the footage pursuant to N.C. Gen. Stat. § 132-1.4A in Jackson County Superior Court Case No. 18CRS51081.  [Doc. 56: Response to Motion to Seal].  The Plaintiff contends that Sergeant Jones' bodycam footage is corrupted.  [See Doc. 43: MSJ Resp. at 4-6].

[8] The footage attributed to Sergeant Jones is time stamped 6/12/18 from 12:34:50 a.m. to 12:42:12 a.m.

| | |
|---|---|
| 12:35:43 | Driver tells Jones that he does not have a license; Osborne is overheard saying "Yes, if you don't mind" to the Plaintiff in the backseat |
| 12:36:12 | Jones asks the driver to step out and speak to him; the driver complies |
| 12:37:20 | Jones pats down the driver for weapons |
| 12:38:46 | Driver consents to a search of his pockets |
| 12:41:54 | Video picture becomes distorted |

The footage attributed to Officer Osborne depicts the following:[9]

| | |
|---|---|
| 12:38:41 | Osborne exits her vehicle and approaches a parked SUV which a male officer has already approached |
| 12:38:45 | The male officer can be overheard asking "what's going on"[10] |
| 12:38:50 | Osborne arrives at the SUV; the male officer is standing at the driver's window |
| 12:39:08 | Male officer asks the driver to put knives on the dashboard |
| 12:39:17 | Osborne asks the Plaintiff through the window what he has and whether he has any weapons; Plaintiff says he has a knife |
| 12:39:38 | Plaintiff makes an unintelligible statement;[11] Osborne responds "yes, if you don't mind" |

---

[9] The footage attributed to Officer Osborne is time stamped 6/12/18 from 12:38:32 a.m. to 01:33:52 a.m.

[10] The two bodycams appear to be out of sync by 3 minutes 55 seconds.

[11] This coincides with Plaintiff's forecast that, at this point, he offered to exit the vehicle. [Doc. 40-3 at ¶ 9].

11

| | |
|---|---|
| 12:39:44 | Plaintiff exits the SUV and places a backpack on the ground, Osborne asks what Plaintiff is doing there |
| 12:39:58 | Osborne asks Plaintiff if she can pat him down, he agrees; Osborne pats the Plaintiff's clothing and empties his pockets |
| 12:42:04 | Osborne asks Plaintiff if she can look in his bag, he responds "I don't care" |
| 12:46:20 | Osborne recovers a pen shell from the backpack and asks Plaintiff "so what's going to be in that?" and Plaintiff responds "I hope nothing" |
| 12:46:37 | Osborne notes that the pen shell has white residue in it; Plaintiff admits "it might" test positive if Osborne were to test it |
| 12:46:59 | Plaintiff admits he used "something" one time but that he does not want to go back to jail |
| 12:47:39 | Osborne recovers folded up foil from the backpack; Plaintiff admits to smoking meth off of it three days ago |
| 12:50:09 | Osborne asks why Plaintiff is hanging around with these people; Plaintiff responds that he was just going to get a ride for something to eat |
| 12:51:12 | Discussing how the Plaintiff had gone into the Wal-Mart with the bag, then exited without it, and returned to buy batteries |
| 12:51:30 | Plaintiff asking Osborne to "look past it" as a favor |
| 12:51:50 | Osborne asks Plaintiff whether there is anything on his side of the SUV, which he denies |
| 12:51:54 | Osborne walks to the SUV and shines her flashlight into the backseat where Plaintiff was sitting |

Case 1:21-cv-00227-MR   Document 59   Filed 09/01/23   Page 12 of 23

| | |
|---|---|
| 12:52:22 | Plaintiff explaining that he can't go back to jail |
| 12:53:18 | Plaintiff admits that methamphetamine will "probably" be in the pen case |
| 12:54:20 | Osborne tells Jones that there will probably be meth in the pen case |
| 12:54:30 | Plaintiff begs not to be charged with a violation |
| 12:55:02 | Osborne walks to her vehicle and field-tests the pen case |
| 12:57:40 | Jones and Osborne approach the SUV and begin searching the backseat area, Jones on the driver's side and Osborne on the passenger side |
| 12:58:54 | Osborne recovers a syringe from the center backseat |
| 12:59:35 | Jones pulls a small container from between the seat and rear cushion where Plaintiff was seated, and opens it |
| 1:00:09 | Unintelligible whispering[12] |
| 1:01:10 | Osborne informing Jones that the straw tested positive |
| 1:01:27 | Osborne retrieves a sharps container and a headlamp from her vehicle |
| 1:02:22 | Osborne returns to the SUV and continues searching the backseat and rear cargo area |
| 1:05:36 | Osborne recovers a bag containing syringes and a packet of white powder from the SUV's rear cargo area |
| 1:07:37 | Osborne retrieves an evidence bag from her vehicle |

---

[12] These appear to be the statements by Jones and Osborne that the Plaintiff interprets as "heroin" and "uh, you blew it," respectively. [See Doc. 12: Am. Compl. at 14].

13

| 1:08:16 | Osborne returns to the SUV and continues searching the cargo area |
|---|---|
| 1:09:04 | Jones can be seen in the SUV's rear driver's side doorway, searching |
| 1:19:19 | Jones and Osborne discussing that the heroin and syringe were found out of the front seat occupants' reach, and that the Plaintiff's pen tested positive for methamphetamine |
| 1:21:02 | Osborne walks to her vehicle |
| 1:21:33 | Osborne returns to where Jones and the Plaintiff are discussing electrical tape; a uniformed officer is present |
| 1:22:39 | Jones tells the Plaintiff to turn his back; Plaintiff repeats "please" and "I didn't do nothing" |
| 1:23:30 | Plaintiff denies he was in the car; Jones reminds the Plaintiff that they saw him sitting in the car |
| 1:23:59 | Plaintiff continues arguing as he is walked to a patrol car |
| 1:24:19 | Jones tells Plaintiff that they found a loaded syringe and heroin in the backseat; Osborne tells Plaintiff that the pen with methamphetamine was found in his bag; Plaintiff continues pleading with them about his probation |
| 1:25:17 | Osborne returns to her vehicle |
| 1:31:23 | Jones asks the vehicle's other occupants who else had been in the backseat that day; discussing going to the Wal-Mart for the bathroom and the Plaintiff's purchase of batteries |

[Doc. 50: Notice of Manual Filing (discs marked "Ricky Hefner OCA #18394

Osborne Evans June 12, 2018 Body Cam" and "Ricky Hefner OCA #18394

Corrupt Only 7 Mins 6-12-18 Jones Body Cam"].

## IV. DISCUSSION

### A. Motion for Summary Judgment

The Plaintiff claims that the Defendants falsely arrested and imprisoned him, and subjected him to a malicious prosecution. The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable ... seizures." U.S. Const. amend. IV. An arrest is a seizure under the Fourth Amendment, and such a seizure is reasonable only if based on probable cause. Wilson v. Kittoe, 337 F.3d 392, 398 (4th Cir. 2003). Probable cause to justify an arrest means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). Whether probable cause exists must be determined "in the light of all of the surrounding circumstances." Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998). To state a cognizable § 1983 claim for false arrest, a plaintiff must allege that law enforcement officers arrested him without probable cause. See Pleasants v. Town of Louisa, 524 F. App'x 891, 897 (4th Cir. 2013). Damages for a false arrest claim covers the time of the detention up until issuance of process or arraignment. Heck v. Humphrey, 512 U.S. 477, 484 (1994).

To make out a federal Fourth Amendment malicious prosecution claim, a plaintiff must show that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012). A plaintiff must demonstrate "both but-for and proximate causation," and therefore "subsequent acts of independent decision-makers (e.g., prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure." Id. Thus, "a police officer is not liable for a plaintiff's unlawful seizure following indictment in the absence of evidence that the officer misled or pressured the prosecution." Id. at 648 (brackets and internal quotation marks omitted). Mead v. Shaw, 716 F. App'x 175, 178 (4th Cir. 2018). "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." Thompson v. Clark, 142 S. Ct. 1332, 1335 (2022).[13]

---

[13] In the Order on initial review of the Second Amended Complaint, the Court noted that it questions whether the new rule in Thompson extends to situations where the charge in question was dismissed as part of a plea agreement whereby the defendant pled guilty to other charges, as appears to be the case here. [See Doc. 21: Order on Initial Review at 7-8; Doc. 19 at 7]. The Court need not reach that question here because, as discussed *infra*, the Plaintiff's arrest was supported by probable cause.

The undisputed forecast of evidence demonstrates that the Defendants' actions complied with the Fourth Amendment by, *inter alia* consensually speaking with the Plaintiff, patting him down, and searching his backpack; searching the vehicle in which he was a passenger for which his consent was not required; and arresting him after they discovered a pen shell in his backpack that tested positive for methamphetamine and a container and loaded syringe in the vehicle's backseat where he had been sitting. Defendants Jones and Osborne state, under oath, that they discovered the drugs in the backpack and vehicle, and that they did not plant any evidence.

The Plaintiff has not forecast any evidence demonstrating the existence of a genuine dispute of material fact in this regard. He claims, on "information and belief," that "defendants approached, detained and interrogated [him] and illegally searched his person and belongings solely on the basis of [Plaintiff's] prior dealings with them and also fabricated and planted evidence for want of probable cause." [Doc. 12: Am. Compl. at 15]. The Plaintiff's allegations "on information and belief" are insufficient to establish a material fact in a summary judgment analysis. See Automatic Radio Mfg. Co. v. Hazeltine Res., Inc., 339 U.S. 827, 831 (1950) (noting that an affidavit based on information and belief does not satisfy Rule 56(e)), overruled on other grounds, Lear, Inc. v. Adkins, 395 U.S. 653 (1969);

17

Cottom v. Town of Seven Devils, 30 F. App'x 230, 234 (4th Cir. 2002) (statements based solely on information and belief do not satisfy the requirements of Rule 56; conclusory affidavits are insufficient to survive a motion for summary judgment).

The Plaintiff also relies on two discs that purport to be Defendants Jones and Osborne's bodycam footage which, he argues, contains an exchange between Osborne and Jones demonstrating that Jones planted evidence in the vehicle. [Doc. 50: Notice of Manual Filing; see Doc. 43: MSJ Resp. at 4-6]. The discs are inadmissible because they are not authenticated and, as such, they cannot be considered in the summary judgment analysis. See Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment"); [see Doc. 52: Defendants' Response to Notice of Manual Filing (noting that no discovery was exchanged in this case, the materials submitted by the Plaintiff were not produced by the Defendants, and the discs and other materials are inadmissible because they are not authenticated)]; Fed. R. Evid. 901, 902 (addressing authentication); see also Fed. R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its contents unless these rules or a federal statute provides otherwise"). Even if the Court were to consider the footage, such footage

fails to establish a genuine dispute of material fact. The Plaintiff's interpretation of unintelligible comments between Defendants Jones and Osborne that—he claims—indicates that they planted evidence, is speculative and conclusory and is insufficient to defeat the Defendants' forecast of evidence. Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) ("[u]nsupported speculation is not sufficient to defeat a summary judgment motion").

The undisputed forecast of evidence demonstrates that there is no genuine dispute of material fact with regard to the existence of probable cause for the Plaintiff's arrest, detention, and initiation of criminal charges. Accordingly, the Defendants' Motion for Summary Judgment will be granted.[14]

## B.   PENDING MOTIONS

The Defendants have filed a Motion to Seal [Doc. 53] the discs of video footage that that the Plaintiff filed in support of his Response to the Motion for Summary Judgment. The Defendants explain that the discs were not

---

[14] The Defendants attempt to raise qualified immunity in their Reply. [Doc. 47: MSJ Reply at 6]. The Court declines to consider it. See DiSimone v. FSL Pharm., Inc., 36 F.4th 518, 531 (4th Cir. 2022) (as a general matter "new arguments cannot be raised in a reply brief" before the district court; whether to do so is discretionary) (quoting United States v. Smalls, 720 F.3d 193, 197 (4th Cir. 2013). Moreover, the Plaintiff's Surreply will not be considered. [Doc. 51: MSJ Surreply]; see LCvR 7.1(e). Even if the qualified immunity argument and Surreply were considered, however, such would not change the outcome of the case.

produced in this case and the Defendants are not aware of the discs' contents, as the Defendants were not provided a copy. [Doc. 54 at 3]. Because the Plaintiff claims that the discs contain the Defendants' body camera footage from the incident, and because such footage would be confidential, the Defendants ask that the Court seal the discs so that they are not made available to disclosure to the general public. The Plaintiff offers no meaningful objection to the Defendants' Motion to Seal and therefore the Court will order the sealing of the discs out of an abundance of caution. Accordingly, the Defendants' Motion to Seal will be granted pursuant to the Court's Local Civil Rule 6.1 and the Clerk will be instructed to permanently seal the discs [Doc. 50].

In his Motion for Funds for a Court Appointment Expert Video Technology Specialist Testimony [Doc. 38], the Plaintiff seeks the appointment of an expert to analyze the Defendants' body worn camera footage because the Plaintiff suspects that Defendant Jones' footage may have been tampered with. The Plaintiff admits that he did not obtain the footage in discovery from the Defendants and he has failed to provide the Defendants with a copy of the discs. He has failed to justify his request for the appointment of an expert in any way. See generally Fed. R. Ev. 706; Fed. R. Civ. P. 26(a)(2)(A); see also United States v. MacCollom, 426 U.S.

317, 321 (1976) ("The established rule is that the expenditure of public funds is proper only when authorized by Congress…."); Pickens v. Lewis, 2017 WL 2198342, at *2 (W.D.N.C. May 18, 2017) (noting that 28 U.S.C.§ 1915 does not authorize the payment of litigation expenses and "[o]rdinarily, the plaintiff must bear the costs of his litigation ... even in pro se cases"). The Plaintiff's Motion requesting the appointment of a video expert is denied.

The Plaintiff filed his Motion for Court Order [Doc. 42] on January 12, 2023,[15] while he was incarcerated at the Tabor Correctional Institution. He asks the Court to order the North Carolina Department of Adult Corrections (NCDAC) to view the contract between NCDAC and Global Tel Link regarding inmates' electronic law library access. This Motion addresses entities that are not parties to this action, it seeks a contract with no apparent applicability to this action, and it was filed after the discovery and dispositive motions deadlines expired on December 5, 2022 and January 4, 2023, respectively.[16] The Plaintiff's Motion is, therefore, denied.

---

[15] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Lewis v. Richmond City Police Dep't, 947 F.2d 733 (4th Cir. 1991) (applying prisoner mailbox rule to § 1983 case).

[16] The Plaintiff now resides at the Sampson Correctional Institution; the Motion is moot insofar as the alleged deficiencies with law library access are not occurring at his new prison. See Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007) ("the transfer of an inmate from a unit or location where he is subject to [a] challenged policy, practice, or condition, to a different unit or location where he is no longer subject to the challenged policy, practice, or condition moots his claims for injunctive and declaratory relief.").

In the Motion for Appointment of Counsel [Doc. 46], the Plaintiff claims that the litigation is exceedingly complex; that the circumstances would prevent any pro se litigant from properly investigating and pursuing the case; that the Plaintiff previously sought appointment of counsel and it was denied, but circumstances have subsequently changed; that the Plaintiff experienced retaliation and adverse circumstances at the Tabor CI, including lack of access to a law library and confiscation of several law books; that he is incarcerated; and that he has limited legal knowledge and resources.

There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). The Plaintiff has again failed to demonstrate the existence of exceptional circumstances that would warrant the appointment of counsel, and this Motion will be denied.

## V.  CONCLUSION

For the reasons stated herein, the Court grants the Defendants' Motion for Summary Judgment, and this action will be dismissed with prejudice. The Plaintiff's Surreply is stricken; Defendants' Motion to Seal is granted; and the Plaintiff's Motions are denied.

22

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1.   Defendants' Motion for Summary Judgment [Doc. 39] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The Plaintiff's Surreply [Doc. 51] is **STRICKEN**.

3.   The Plaintiff's Motion for Funds for a Court Appointment Expert Video Technology Specialist Testimony [Doc. 38] is **DENIED**.

4.   The Plaintiff's Motion for Court Order [Doc. 42] is **DENIED**.

5.   The Plaintiff's Motion for Appointment of Counsel [Doc. 46] is **DENIED**.

6.   The Defendants' Motion to Seal [Doc. 53] is **GRANTED**.   The Clerk is instructed to permanently seal the two discs that were manually filed on the Plaintiff's behalf [Doc. 50].

**IT IS SO ORDERED.**

Signed: August 31, 2023

Martin Reidinger
Chief United States District Judge